IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:17-cr-00057(1) |
| Plaintiff, | : | Judge Susan J. Dlott |
| v. | : | **ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE** |
| ERIC ZYN HO, | : | |
| Defendant. | : | |

Defendant Eric Zyn Ho is charged with conspiracy to commit sex trafficking of children in violation of 18 U.S.C. §§ 1591(a)(1) and 1594(c) (Count One) and conspiracy to produce child pornography in violation of 18 U.S.C. § 2251(a), (e) (Count Two). (Doc. 18.)[1] This matter is before the Court on Defendant Ho's Motion to Suppress Evidence. (Doc. 29.) The United States filed a memorandum in opposition (Doc. 35), and, with leave of Court, Defendant Ho filed a reply (Doc. 38). Oral argument took place on August 3, 2017. Defendant Ho thereafter filed a Post Hearing Supplemental Memorandum to Correct a Matter of Law. (Doc. 39.) For the reasons that follow, Defendant Ho's Motion will be DENIED.

**I. BACKGROUND**

Defendant Ho asks the Court to suppress the evidence seized—from the residence at 758 Rue Center Court, Apt. J, Cincinnati, Ohio 45245—by the Union Township Police Department, on or about May 2, 2017, in the course of executing a search warrant. (Doc. 29 at PageID 115.) He claims the search warrant violated the Fourth Amendment because it was not supported by

---

[1] Defendant Bryan Mathew Otero also is charged in the Indictment. (Doc. 18.)

1

probable cause and because the good-faith rule, articulated in *United States v. Leon*, 468 U.S. 897 (1984), does not apply. (*Id.* at PageID 117, 123.)

On May 2, 2017, affiant John Pavia, a detective with the Union Township Police Department, sought and received a search warrant from a Clermont County Municipal Court Judge. Detective Pavia identified three state felony criminal violations in connection with the warrant: sexual battery (in violation of Ohio Rev. Code § 2907.03), unlawful sexual conduct with a minor (in violation of Ohio Rev. Code § 2907.04), and interference with custody (in violation of Ohio Rev. Code § 2919.23). (Doc. 29-1, SEALED, PageID 131.) The salient facts within his supporting affidavit are as follows:

- On April 28, 2017, a fourteen-year-old minor ("MINOR VICTIM A") was "discovered missing" from Griffith, Indiana and "a report was filed" with the Lake County, Indiana Sheriff. (*Id.*)

- On May 2, 2017, a Federal Bureau of Investigation ("FBI") agent in Kansas learned that Ian Smith and MINOR VICTIM A met "over social media." Smith stated that, on April 27, 2017, he picked up MINOR VICTIM A in Griffith and they proceeded to Fort Wayne, Indiana where they spent the night. On April 28, 2017, they drove to Franklin, Ohio where they stayed the night. (*Id.*)

- The next day, April 29, 2017, Smith and MINOR VICTIM A met "Erik Z. Ho" and "Bryan M. Otero" at a Family Dollar store located on State Route 125 in Clermont County, Ohio. Smith had made arrangements for MINOR VICTIM A to stay with them for "an unspecified period of time." He introduced MINOR VICTIM A to Ho and Otero, gave her bags to them, and "provided her $250 in spending money." Smith stated he would return for MINOR VICTIM A at a later date once "he obtained enough money for his own residence." Smith told Ho and Otero that MINOR VICTIM A was fourteen years old and resided in a state other than Ohio. (*Id.*)

- On May 1, 2017, Smith received an email from Otero that read: "Things just need to simmer down and it will take more than a couple days for it to settle down. I don't mind letting her out early, but I also don't want to put you in financial risk/ruin. She is slightly excited learning the things I will be teaching her." This email originated from the address kiloslut@outlook.com with the display name "Kilo Hyte." (*Id.*)

2

- On May 2, 2017, police officers from Union Township, along with two FBI agents, responded to 758 Rue Center Court, Apt. J, Cincinnati, Ohio 45245, for a welfare check on MINOR VICTIM A. They knocked on the door, and Otero answered. The officers entered the residence and found Ho and MINOR VICTIM A "in the closet of the back bedroom." (*Id.*)

- Ho and Otero were transported to the Union Township Police Department to be interviewed. MINOR VICTIM A was transported to Cincinnati Children's Hospital "for the completion of a sexual assault evidence collection kit and to be forensically interviewed." (*Id.* at PageID 131–32.)

- While in the residence, the FBI agents observed digital media and sex toys in plain view "in the rear left bedroom." (*Id.* at PageID 132.)

- Detective Pavia is an eighteen-year veteran of Union Township Police Department, having served as a detective for more than 11 years. Through his prior training and experience, he knows "that DNA could still be on the victim of a sex offense as well as the bedding where the incident occurred." (*Id.*)

## II. STANDARD OF LAW

### A. Probable Cause

In determining whether a search warrant is supported by probable cause, a court may consider only the "four corners of the affidavit." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citing *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n.8 (1971)). Thus, "information known to the officer but not conveyed to the magistrate is irrelevant." *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) (quoting *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010)).

An affidavit must show a "likelihood of two things" to establish probable cause for a search. *Id.* (internal quotations and citations omitted). They are: "first, that the items sought are seizable by virtue of being connected with criminal activity; and second, that the items will be found in the place to be searched." *Id.* (citing *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016 (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 n.6 (1978))) (internal quotations

omitted). "[E]vidence of a crime" is a critical component of a search warrant. *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) (citing *Zurcher*). To this end, an applicant for a search warrant must recite the statutory violation for which the warrant is requested on the face of the warrant or in the affidavit in support. *See United States v. Abboud*, 438 F.3d 554, 569–71 (6th Cir. 2006).

Probable cause exists when "common-sense" suggests a "fair probability" that contraband or evidence of a crime "will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause "is not a high bar." *Kaley v. United States*, 134 S. Ct. 1090, 1103 (2014). "It requires only the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act." *Id.* (citing *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013) (quoting *Gates*, 462 U.S. at 231, 238)) (internal quotations omitted) (alteration in original). A reviewing court should give "great deference" to a magistrate judge's probable cause determination and reverse only if it was "arbitrarily" made. *United States v. Frechette*, 583 F.3d 374, 379 (6th Cir. 2009). And it should not engage in "line-by-line scrutiny of the warrant application's affidavit." *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008). The affidavit should be judged "on the adequacy of what it **does** contain, not on what it **lacks**, or what a critic might say **should have been added**." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (emphases added).

**B. Good-Faith Rule**

"When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Illinois v. Krull*, 480 U.S. 340, 347 (1987) (citations omitted). But courts typically should not suppress "evidence obtained in objectively reasonable reliance on

4

a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). The four specific situations in which an officer's reliance cannot be considered "objectively reasonable" are: (1) when the warrant is issued on the basis of an affidavit that an affiant knows—or is reckless in not knowing—contains false information; (2) when the issuing magistrate abandons his or her neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid. *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005).

### III. ANALYSIS

The Court agrees with the Government that the facts recited in Detective Pavia's supporting affidavit establish the kind of "fair probability" the Fourth Amendment requires. The Court also agrees that even if the search warrant was deficient, any evidence obtained from the apartment nonetheless should be saved by the *Leon* good-faith rule.

#### A. Probable Cause Supports the Search Warrant

According to Defendant Ho, the "clear problem" with the warrant is that it does not establish probable cause to believe that the listed crimes—sexual battery, unlawful sexual conduct with a minor, and interference with custody—had been committed. (Doc. 29 at PageID 118.) The first two of the three crimes require evidence of sexual acts or conduct, and "the word sex is never used once in relation to the girl." (*Id.*) Rather, the word "sex" is used only twice in the factual section of the affidavit, once to mention that "sex toys" were seen in a "different" bedroom in the house and once in "the affiant's description of where DNA evidence is ordinarily found in sex offenses." (*Id.*) The third crime is "entirely unsupported" because there is no

5

mention of "a parent or guardian," and thus no suggestion of "whose custody was interfered with." (*Id.*) In the end, therefore, probable cause can be found *only* if the Court makes inferential leaps, a practice Defendant Ho contends is "clearly disfavored." (*Id.* at PageID 119.)

Two Sixth Circuit cases were discussed in the parties' respective memoranda and debated during oral argument. In *United States v. Hodson*, a detective swore out a search warrant to search the defendant's residence for evidence of child pornography based on a different detective's online chat with the defendant where the defendant expressed an interest in seeing young boys naked and having sex with them. 543 F.3d 286, 289 (6th Cir. 2008). The Court held that it was "beyond dispute" that the warrant was defective for lack of probable cause, because the detective "established probable cause for one crime (child molestation) but designed and requested a search for evidence of an entirely different crime (child pornography)." *Id.* at 292. In *United States v. Brown*, a district judge denied a motion to suppress evidence recovered from a known drug dealer's home even though the search warrant affidavit "contained **no** evidence that [the defendant] distributed narcotics from his home, that he used it to store narcotics, or that any suspicious activity had taken place there." 828 F.3d 375, 382 (6th Cir. 2016) (emphasis added). The Circuit reversed, holding:

> In sum, our cases teach, as a general matter, that if the affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity, or the evidence of this connection is unreliable, it cannot be inferred that drugs will be found in the defendant's home—even if the defendant is a known drug dealer. The affidavit here lacks that necessary nexus. Given this flaw, it was not proper to infer a fair probability of finding contraband or evidence of a crime at the particular place.

*Id.* at 384 (citing *Gates*, 462 U.S. at 238).

In the Court's view, the facts contained within Detective Pavia's supporting affidavit—considered together—are sufficient to establish probable cause with respect to the allegation of interference with custody. In pertinent part, Ohio Rev. Code § 2919.23 states:

> (A) **No person**, knowing the person is **without privilege to do so** or being reckless in that regard, **shall** entice, take, **keep, or harbor** a person identified in division (A)(1), (2), or (3) of this section from the parent, guardian, or custodian of the person identified in division (A)(1), (2), or (3) of this section:
>
> (1) **A child under the age of eighteen**, or a mentally or physically handicapped child under the age of twenty-one[.]

(Emphases added.) The affidavit identifies MINOR VICTIM A as "under the age of eighteen." Ian Smith, a man she met on the internet, arranged for her to stay with Defendant Ho and co-Defendant Otero, strangers to whom she was introduced in a public parking lot.[2] This arrangement was to last until Smith could afford his own residence. Two days later, co-Defendant Otero emailed Smith, telling him "things" needed to "simmer" and "settle" down, but added "I don't mind letting her out early." When the authorities came calling the next day, MINOR VICTIM A was found in a bedroom closet with Defendant Ho, hiding. These particulars, collectively, indicate that since April 29, 2017, Defendant Ho was "keeping" or "harboring" MINOR VICTIM A "without privilege to do so."

Defendant Ho argues against a finding of probable cause because the supporting affidavit does not state *his* age, or the ages of Smith and co-Defendant Otero. (Doc. 38 at PageID 163 ("For all the issuing magistrate knew, all three of these individuals were minors.").) It would defy common sense, however, for the Clermont County Municipal Judge to have questioned whether they also were minors, and, in any event, *their* age is irrelevant to the charge. The Court likewise rejects Defendant Ho's contention that the affidavit is flawed because it does not

---

[2] Notably, it was a Family Dollar store parking lot, where a steady stream of in-and-out traffic conceivably would divert attention from their encounter.

reference or specifically name MINOR VICTIM A's "parent, guardian, or custodian," the putative victim of this crime. It is *not* an inferential leap to presume that a fourteen year old has a parent, guardian, or custodian. It would be one, though, to presume that—at fourteen—she had been emancipated under Indiana law as Defendant Ho proposes. *See* Ind. Code § 31-37-19-27. The affidavit states that MINOR VICTIM A was "discovered missing" and "a report was filed" with the local sheriff. The affidavit additionally states that an FBI agent relayed that Smith, "from Kansas," met MINOR VICTIM A, an Indiana resident, "over social media." Consequently, it also is *not* an inferential leap to presume that Smith is *not* MINOR VICTIM A's parent, guardian, or custodian and that someone else *is*. *Allen* requires this Court to judge Detective Pavia's affidavit only on whether the facts within are adequate. Naturally the affidavit would have been more complete had it stated, for example, that MINOR VICTIM A was "discovered missing *by her parents*." As is, though, it suffices.[3]

Probable cause with respect to the sex crimes charged is a closer call, but nevertheless exists. Without question, "sexual conduct" is an element of each offense, and, yet, according to Defendant Ho, "[a]t no place in the affidavit does the officer state or even directly suggest that any person committed a sex act against the girl in this case." (*See* Doc. 29 at PageID 118.) The Court disagrees. The following facts—again, considered together—were adequate to "suggest" that Detective Pavia believed that sexual conduct had occurred:

- On May 1, 2017, co-Defendant Otero sent an email to Smith from an email address containing the word "slut," a pejorative term to describe a "promiscuous

---

[3] The Ohio cases cited by Defendant Ho post-hearing do not require a different result. *Ohio v. Wright*, 2016-Ohio-7654, 74 N.E.3d 695, at ¶¶ 34, 36, 40 (Ohio App. 4th Dist.), decided issues of venue, whether "custody" encompasses visitation rights of the noncustodial parent, and—in cases where custody is awarded by court order—whether a defendant must be served with that order to establish knowledge. *Ohio v. Strayer*, No. 02CA29, 2003 WL 21321421 (Ohio App. 5th Dist. June 9, 2003), resolved assignments of error concerning attorney (versus *pro se*) representation and punishment. And the court in *State v. Cornelius*, No. 10CA10, 2011 WL 2112744 (Ohio App. 2d Dist. May 27, 2011), decided whether there was insufficient evidence of a custodial relationship (between a married couple and their 18-year-old "mentally handicapped" cousin) to convict.

woman."⁴ That email stated that "things" needed to "simmer" and "settle" down; that it would take "more than a couple days for it to settle down;" that Otero"[didn't] mind letting her out early;" and that "[s]he is slightly excited learning the things I will be teaching her."

- On May 2, 2017, Defendant Ho and MINOR VICTIM A were found "in the closet of the back bedroom."

- On May 2, 2017, sex toys were observed in plain view "in the rear left bedroom."

- On May 2, 2017, MINOR VICTIM A "was transported to Cincinnati Children's Hospital for the completion of a sexual assault evidence collection kit and to be forensically interviewed."

- Prior training and 18 years of police experience informed Detective Pavia's belief "that DNA could still be on the victim of a sex offense as well as the bedding where the incident occurred."

Defendant Ho maintains that "the presence of sex toys in the apartment" does not validate a presumption of sexual abuse "any more than it would be likely that [MINOR VICTIM A] drank coffee because of the presence of a coffee pot in the kitchen." (Doc. 38 at PageID 162.) But review of the statutory definition of "sexual conduct" undercuts this analogy:

> [V]aginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, **the insertion, however slight, of** any part of the body or **any instrument, apparatus, or other object** into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

Ohio Rev. Code § 2907.01(A) (emphasis added). A sex toy obviously qualifies as an "instrument, apparatus, or other object" that could be used to accomplish penetration, and therefore provides a "nexus" to the likelihood of abuse.⁵ *Brown*, 828 F.3d at 384 (citing *Gates*, 462 U.S. at 238). Moreover, Detective Pavia does not qualify the hospital transport as routine. It

---

⁴ https://www.merriam-webster.com/dictionary/slut
⁵ This connection is not diminished by the confusion over whether the "back" bedroom—where Defendant Ho and MINOR VICTIM A were hiding—is the same room as the "rear left" bedroom—where the sex toys were observed in plain sight. *Allen*, 211 F.3d at 973 ("[A] hypertechnical critique of warrants would only, in the end, encourage warrantless searches, undermining the very Fourth Amendment right such an approach would seek to protect.") (citing *Gates*, 462 U.S. at 236).

bears repeating that probable cause "is not a high bar." *Kaley*, 134 S. Ct. at 1103. Just enough facts support the municipal court judge's determination as it relates to the sex crimes charged, and there is no indication that his finding of probable cause was "arbitrarily" made. *Frechette*, 583 F.3d at 379.

### B. Regardless, the *Leon* Good-Faith Rule Would Apply

Had the Court invalidated the search warrant, it would be necessary examine "whether any other consideration—specifically, the *Leon* good-faith rule—can overcome the defect and justify admission of the evidence anyway." *Hodson*, 543 F.3d at 292. Defendant Ho claims that the rule should not apply, because "[n]o objective officer could look at this warrant and believe it was supported by probable cause where the attesting officer never even stated his belief (unsupported or otherwise) that a sex crime or custodial interference may have occurred, much less provided any facts to support it." (Doc. 29 at PageID 123.)

Exclusion is a "last resort," because it exacts "a heavy toll on both the judicial system and society at large." *Davis v. United States*, 564 U.S. 229, 237 (2011). As explained in a previous Fourth Amendment case,

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.

*Herring v. United States*, 555 U.S. 135, 144 (2009). Mindful of this instruction, even if this Court had found that probable cause was lacking, it alternatively would hold that the evidence obtained pursuant to the search warrant should be saved by *Leon*.

Because Defendant Ho argues that the affidavit failed under the third exception to the *Leon* rule, the question that this Court must address is "whether the faceless, nameless

'reasonably well trained officer' in the field, upon looking at this warrant, would have realized that the search described . . . did not match the probable cause described . . . and therefore the search was illegal, despite the [municipal court judge's] decision to the contrary." *Hodson*, 543 F.3d at 293 (quoting *United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003) (quoting *Leon*, 468 U.S. at 923 n.23)). We conclude here, contrary to the outcome in *Hodson*, that a "reasonably well trained officer" would be satisfied of a match.

Regarding the crime of interference with custody, the affidavit stated the 14-year-old MINOR VICTIM A was reported missing from Indiana four days earlier. She was brought to Ohio by a man from Kansas whom she met on the internet. He, in turn, introduced her to Defendant Ho and co-Defendant Otero in a public parking lot. Otero sent an email to the man in the interim stating that "things" needing to "simmer" and "settle" down but she[6] "d[id]n't mind letting her out early" and MINOR VICTIM A was found in a closet when federal and state officers conducted a welfare check. Regarding the sex crimes, the same email used a return address containing the word "slut" and indicated that MINOR VICTIM A "was slightly excited learning the things [Otero] would be teaching her." Not only was MINOR VICTIM A found in a closet during the welfare check, but Defendant Ho was found there as well, and sex toys were in plain view. Further, the responding officer sent MINOR VICTIM A to the hospital for "the completion of a sexual assault evidence collection kit and to be forensically interviewed," and there is no indication that a hospital transport was standard operating procedure. While not a model affidavit, it is far from "bare bones"[7] with respect to any of the three crimes. *United States v. Hollin*, 459 F. App'x 535, 539 (6th Cir. 2012) ("[Bare bones] affidavits fall within the

---

[6] The Court has been advised by Pretrial Services and by Attorney Thomas Kidd that co-Defendant Otero identifies as a woman, hence use of the feminine pronoun.
[7] A "bare bones" affidavit is one that fails to provide "sufficient factual information for a finding of probable cause." *United States v. Weaver*, 99 F.3d 1372, 1379–80 (6th Cir. 1998).

third exception to the *Leon* [good-faith rule] because they are 'lacking in indicia of probable cause.'") (quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005)). Accordingly, it does not fail under the third exception to the *Leon* good-faith rule. The evidence seized from the apartment would be admissible at trial even if the search warrant was defective.

## IV. CONCLUSION

For the reasons set forth above, the Motion to Suppress Evidence (Doc. 29) filed by Defendant Eric Zyn Ho is hereby **DENIED** in its entirety.

**IT IS SO ORDERED**.

Dated: August 24, 2017        S/Susan J. Dlott_____
                              Judge Susan J. Dlott
                              United States District Court