IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | : | |
| | : | Case No. 1:17-cr-0057 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Denying Motion for |
| Eric Zyn Ho, | : | Compassionate Release |
| | : | |
| Defendant. | : | |

This matter is before the Court on Defendant Eric Zyn Ho's Motion for Compassionate Release (Doc. 111) and the Supplemental Memorandum in Support of Defendant's Pro Se Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 115). The Government strongly opposes Ho's early release. (Doc. 120.) For the reasons that follow, Ho's Motion will be **DENIED**.

I.  **BACKGROUND**

On December 11, 2017, Ho pled guilty to conspiracy to sex traffic children and conspiracy to produce child pornography. (Sealed Plea Agreement, Doc. 48; Transcript of Change of Plea Proceedings, Doc. 95.) The Statement of Facts to the Plea Agreement and portions of the transcript of the Change of Plea Hearing were sealed by the Court pursuant to the Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509(d)(3). (Doc. 56.) On May 31, 2018, the Court sentenced Ho to a Federal Rule of Criminal Procedure 11(c)(1)(C) agreed sentence of 360 months of imprisonment, ten years of supervised release, and a $200 special assessment. (Doc. 45 at PageID 193; Doc. 68; Doc. 97.) The parties' agreed-upon sentence fell below the United States Sentencing Guidelines advisory range of life imprisonment. (Doc. 97 at PageID 407.)

1

Because the Statement of Facts in this case is sealed, the Court will draw upon the Government's brief summarizing Ho's conduct:

> A 14-year-old female (Minor Victim A) left her home in Griffith, Indiana and left behind a suicide note in her bedroom. Law enforcement officers were able to track down an individual by the name of Ian Smith who admitted driving her to Ohio and delivering her to Ho and his codefendant Bryan Otero. Eventually, working with law enforcement officers from Kansas, Indiana, and Ohio, the FBI located Minor Victim A in the defendants' apartment located at 758 Rue Center Court, Cincinnati, Ohio. When found, she was in a bedroom closet with the defendant. While at the apartment, she was subjected to a disturbing form of sexual abuse primarily inflicted by the defendant.

(Doc. 120 at PageID 600–01.[1])

The Sentencing Hearing, as well as a victim impact statement submitted to the Court from Minor Victim A, made clear Ho's conduct has had a very significant, negative, long-lasting impact on Minor Victim A. At the Sentencing Hearing, the Court expressed the following:

> I might just add that this was an agreed-upon sentence between the government and the defense. However, in 23 years on the bench, I think this is probably the most egregious case I've ever seen, and I wholeheartedly believe in this sentence. And I'm glad I won't be alive when you get out of prison.

(Doc. 97 at PageID 430.) This case has left a lasting impression on the undersigned. The details of Ho's horrific conduct remain very vivid, and Minor Victim A's letter to the Court detailing her trauma and suffering weigh heavily on the undersigned. Ho is serving his justified 360-month sentence at FCI Cumberland. He has many more years of imprisonment left to serve with an estimated release date of November 24, 2042. His early release is in no way justified.

## II. STANDARD OF LAW

Ho seeks a reduced sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court lacks authority to resentence a defendant, except as permitted by statute. *United States v. Houston*, 529 F.3d 743, 748–749 (6th Cir. 2008). The compassionate release provisions in 18 U.S.C. §

---

[1] Although the Government's description more than adequately describes Ho's conduct for purposes of this Order, it necessarily fails to fully convey the full scope of the abhorrent child sexual abuse endured by the victim.

2

3582(c)(1)(A) were "intended to be a 'safety valve' to reduce a sentence in the 'unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner.'" *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (quoting S. Rep. 98-225, at 121 (1983)). A defendant seeking a sentence reduction bears the burden of proof. *Id.* at 426; *United States v. Hill*, No. 5:14CR337, 2020 WL 5104477, at *1 (N.D. Ohio Aug. 31, 2020). Section 3582(c) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Assuming that the inmate has exhausted administrative remedies,[2] the district court must (1) determine whether "extraordinary and compelling reasons" warrant a reduction and (2) weigh the relevant sentencing factors listed in § 3553(a). *United States v. Jones*, 980 F.3d 1098, 1101, 1108 (6th Cir. 2020).[3] "Congress did not define what constitutes an 'extraordinary and

---

[2] There is no dispute that Ho exhausted his administrative remedies pursuant to 18 U.S.C. § 3582(c). He sought compassionate release from the Warden of his prison, who denied the request on March 24, 2021 (Doc. 111-1 at PageID 574–76). Defendant's Motion for Compassionate Release (Doc. 111) was filed more than thirty days after the Warden's response.

[3] The Sixth Circuit determined in *Jones* that the only U.S. Sentencing Commission Policy Statement potentially applicable to motions for compassionate release—U.S.S.G. § 1B1.13—is inapplicable to cases filed by federal

3

compelling reason,' except to state that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" *United States v. Hunter*, No. 21-1275, — 4th —, 2021 WL 3855665, at *3 (6th Cir. Aug. 30, 2021) (quoting 28 U.S.C. § 994(t)). Courts generally have discretion to define what constitutes "extraordinary and compelling" reasons. *Id.* Nonetheless, the Sixth Circuit recently defined two restrictions on that discretion:

> First, non-retroactive changes in the law, whether alone or in combination with other personal factors, are not "extraordinary and compelling reasons" for a sentence reduction. Second, facts that existed when the defendant was sentenced cannot later be construed as "extraordinary and compelling" justifications for a sentence reduction.

*Id.* at *4.

The § 3553 factors referenced in the statute include (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. § 3553. These factors implicitly allow the Court to consider the amount of time served when determining if a reduction in sentence is appropriate. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020). Also, district courts can consider the non-retroactive changes in law relevant to sentencing as part of its weighing of the § 3553(a) sentencing factors. *See Hunter*, 2021 WL 3855665, at *6; *United States v. Jarvis*, 999 F.3d 442, 445 (6th Cir. June 3, 2021). District courts are encouraged to be "explicit and particular with their factual reasoning" when they consider the § 3553(a) factors. *Jones*, 980 F.3d at 1113.

---

inmates. 980 F.3d at 1109, 1111. Therefore, the district court has full discretion to define "extraordinary and compelling reasons" without reference to the policy statement in § 1B1.13. *Id.* at 1111; *United States v. Elias*, 984 F.3d 516, 519–520 (6th Cir. Jan. 6, 2021).

4

### III. ANALYSIS

#### A. No Extraordinary and Compelling Reason for Release

Ho argues that the risk of COVID-19 to him while incarcerated justifies his early release. COVID-19 is caused by severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2) and was recognized as a pandemic in March 2020. Ho claims that his asserted conditions of dormant asthma, sleep apnea, common allergies, and a possible undiagnosed auto-immune disease render him at high risk of serious illness from COVID-19. This argument is unavailing for several reasons.

First, Ho does not have serious medical conditions that cause a significant increase of risk of severe illness from COVID-19. He did not submit his medical records in support of his Motion such that the Court could confirm his purported medical conditions.[4] Regardless, the Court does not find that Ho's asserted conditions rise to the level warranting compassionate release. In this Court's experience, compassionate release due to COVID-19 medical risks has been reserved for the most severe illnesses which cause a significant increase of risk from COVID-19. By way of comparison, the Court found an extraordinary and compelling reason for compassionate release where a non-ambulatory and severely ill inmate suffered from a long list of severe medical conditions known to increase her risk of severe illness from COVID-19, including the non-recoverable conditions of kidney and heart failure. *United States v. Smith*, No. 15-cr-119 (S.D. Ohio Nov. 10, 2020) (Doc. 327) (granting motion for compassionate release). Furthermore, unlike this case, in *Smith*, the Government withdrew its objections to the defendant's release, and the motion was decided prior to the availability of a COVID-19 vaccine. *Id.* Ho's asserted medical conditions simply do not rise to the same rare and extraordinary level. *See also United States v. Jenkins-Mills*, No. 3:17-CR-00025-TMKR-MRM-2, 2020 WL

---

[4] Ho offered to supplement his filing with records upon request.

6146418, at *4 (S.D. Ohio Oct. 20, 2020) (finding no extraordinary and compelling reason for compassionate release of 30-year-old defendant with medical condition of obesity).

Second, since the pandemic began, three vaccines have been developed in the United States and have been recognized by the Centers for Disease Control ("CDC") as safe and effective at reducing the risk of severe illness from COVID-19. *Centers for Disease Control and Prevention*, COVID-19, "Different COVID-19 Vaccines," https://www.cdc.gov/coronavirus/ 2019-ncov/vaccines/different-vaccines.html (last accessed 9/23/2021).[5] The Government asserts that every inmate in a Bureau of Prisons ("BOP")-managed institution has been offered a COVID-19 vaccine. (Doc. 120 at PageID 604.) It also asserts that the BOP will continue to offer vaccines to newly arrived inmates, as well as inmates who initially declined a vaccine if they change their minds, as expeditiously as possible as supplies are available. (*Id.*) The risk of COVID-19 to an inmate is mitigated by the availability of a safe and effective vaccine.

The Court has no information regarding whether Ho has been inoculated against COVID-19. Ho asserts that his "health conditions that render his confinement unsafe also potentially render his vaccination unsafe," suggesting he declined a vaccine due to safety concerns for possible undiagnosed auto-immune disorder. (Doc. 115 at PageID 591.) However, "[n]ow that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions [based on COVID-19 risks] generally lack merit." *United States v. Reed*, No. 18-cr-0078, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021) (denying

---

[5] On August 23, 2021, the Pfizer-BioNTech (COMIRNATY) vaccine became the first COVID-19 vaccine to receive U.S. Food and Drug Administration ("FDA") approval for individuals 16 years of age and older. *Centers for Disease Control and Prevention*, COVID-19, "Pfizer-BioNTech COVID-19 Vaccine Overview and Safety (also known as COMIRNATY)", https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html (last visited 9/23/2021). According to the CDC, "[b]ased on evidence from clinical trials in people 16 years and older, the Pfizer-BioNTech (COMIRNATY) vaccine is 95% effective at preventing laboratory-confirmed infection with the virus that causes COVID-19 in people who received two doses and had no evidence of being previously infected." *Id.*

compassionate release motion to vaccinated inmate). Once an inmate is vaccinated against COVID-19, there is little-to-no risk of contracting severe COVID-19 and thus no extraordinary and compelling reason to justify compassionate release. *United States v. Groom*, No. 2:17-cr-159, 2021 WL 1220225, at *2 (S.D. Ohio April 1, 2021) (denying compassionate release to partially vaccinated inmate). And an inmate "who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. July 21, 2021). Similarly, Ho's request based on the risk of severe illness from contracting COVID-19 lacks merit due to the availability of the COVID-19 vaccine to reduce that very risk.

Third, the majority of the inmate population as FCI Cumberland is vaccinated and the number of COVID-19 infections remains low there. At FCI Cumberland, 195 staff and 766 inmates have been fully vaccinated against COVID-19. *See* Federal BOP, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited 9/23/2021). With an inmate population of 1,198, this is a vaccination rate of approximately 64% of the inmate population. *See* Federal BOP, FCI Cumberland, https://www.bop.gov/locations/institutions/cum/ (last visited 9/23/2021). FCI Cumberland currently has 14 inmates and 7 staff who have tested positive for COVID-19, as well as 315 inmates and 70 staff who have recovered from COVID-19. 0 inmates and 0 staff deaths from COVID-19 have been reported at the facility. *See* Federal BOP, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited 9/23/2021).

For these reasons, compassionate release is not merited. Ho does not have serious medical conditions. The COVID-19 vaccine is available to Ho at his facility. He has either declined the vaccine or is inoculated against COVID-19. Furthermore, a significant portion of

the inmate population has been inoculated against COVID-19. There is no justification that COVID-19 presents a serious risk to Ho at this time. The Court, therefore, cannot conclude that an extraordinary and compelling reason exists for his release.

### B. 18 U.S.C. § 3553(a) Sentencing Factors

Regardless, because of the egregious nature of this case, the Court finds that the 18 U.S.C. § 3553(a) sentencing factors weigh strongly against Ho's early release. Among the factors to be considered are the nature and characteristics of the defendant's offense; the defendant's criminal history; the need for the sentence imposed to reflect the seriousness of the defendant's conduct; the need to protect the public; the Guidelines range; and the need to avoid unwarranted sentencing disparities. The Court thoroughly considered these factors at the Sentencing Hearing and its conclusions have not changed.

The nature and characteristics of Ho's offense are horrendous. The conduct involves abhorrent sexual abuse and manipulation of a minor victim. The impact on this victim has been detrimental and significant. The Court feels strongly that crimes against children are among the most serious, and children are among the most vulnerable portion of the population for which it is entrusted to protect. As stated previously at his Sentencing Hearing, Ho's conduct remains among the most egregious the undersigned has seen in many years on the bench. The Court feels a very compelling need to continue to protect the public from future harm by Ho, which can only be accomplished by his imprisonment.

Reducing Ho's sentence would lead to sentencing disparities. Ho already received an agreed-upon sentence which is lower than he would have received if sentenced without it. Reducing his sentence further would undermine the original sentence, diminish the seriousness of his conduct, and hamper the effort to deter child sex trafficking and producing child

pornography. Finally, although Ho had no prior criminal history, the other factors far outweigh the fact that this was the first time Ho was convicted of a crime.

For these reasons, the Court concludes that the 18 U.S.C. § 3553(a) sentencing factors do not support a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Quite the opposite. The sentencing factors weigh strongly in favor of Ho's necessary confinement for the full duration of his sentence. There is absolutely no justification for his early release.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release (Doc. 111) and the Supplemental Memorandum in Support of Defendant's Pro Se Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 115) are **DENIED**.

**IT IS SO ORDERED**.

BY THE COURT:

_____
Susan J. Dlott
United States District Judge